UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RONNIE S. MOORE,

       Plaintiff,

v.

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL
EMPLOYEES LOCAL 1095, *et al.*,

       Defendants.

17-CV-704-LJV-MWP
DECISION & ORDER

---

On July 26, 2017, the plaintiff, Ronnie S. Moore, commenced this action against American Federation of State, County and Municipal Employees Local 1095 ("Local 1095") and Erie Community College ("ECC") under Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law. Docket Item 1 (complaint against Local 1095); No. 17-cv-705, Docket Item 1 (complaint against ECC).[1] Moore alleges that Local 1095 twice discriminated against him on the basis of race and color: once when it removed him as union president and again when it did not arbitrate his grievance after ECC terminated his employment. Docket Item 1. He alleges that ECC likewise discriminated against him on the basis of race and color when it terminated his employment. No. 17-cv-705, Docket Item 1.

---

[1] Moore originally filed separate actions against Local 1095 (No. 17-cv-704) and ECC (No. 17-cv-705), but in November 2020, he moved to consolidate the two actions. No. 17-cv-705, Docket Item 30. This Court granted that motion and consolidated the two actions under case number 17-cv-704. No. 17-cv-705, Docket Item 31. Unless otherwise noted, all citations are to case number 17-cv-704.

The case initially was referred to United States Magistrate Judge Hugh B. Scott for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B), Docket Item 9, but later was reassigned to United States Magistrate Judge Marian W. Payson, Docket Item 65. On March 1, 2021, Local 1095 moved for summary judgment, Docket Item 63, and about a month later, ECC also moved for summary judgment, Docket Item 71. Moore opposed both motions, asked the Court to reopen discovery pursuant to Federal Rule of Civil Procedure 56(d), and cross-moved for summary judgment on his claims against Local 1095. Docket Items 70 (opposition to Local 1095's motion); 72 (Moore's affidavit in opposition to Local 1095's motion); 75 (opposition to ECC's motion); 76 (amended opposition to ECC's motion); 77 (cross-motion). Judge Payson heard oral argument on those motions, *see* Docket Items 79 and 81, and on January 28, 2022, she issued a Report and Recommendation ("R&R") finding that Local 1095's motion and ECC's motion should be granted and that Moore's cross-motion should be denied, Docket Item 82.

More specifically, Judge Payson found that Local 1095's motion was not premature and that Moore was not entitled to more discovery. *Id.* at 10-13. She recommended granting Local 1095 summary judgment on Moore's removal-as-president claim because he failed to timely exhaust that claim with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 13-14. Judge Payson also recommended granting Local 1095 summary judgment on the failure-to-arbitrate claim because Moore failed to raise a triable issue of fact that would give rise to an inference of discrimination. *Id.* at 14-18. Similarly, Judge Payson recommended granting ECC

summary judgment because Moore did not raise a triable issue of fact that would give rise to an inference that ECC discriminated against him. *Id.* at 18-25.

On February 18, 2022, Moore objected to the R&R with respect to Local 1095 on several grounds, but he said nothing about Judge Payson's recommendation to grant summary judgment to ECC. Docket Item 85. The next month, ECC and Local 1095 responded to the objection. Docket Items 87 (ECC response); 88 (Local 1095 response). And a short time later, Moore replied. Docket Item 90.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). But neither 28 U.S.C. § 636 nor Federal Rule of Civil Procedure 72 requires a district court to review the recommendation of a magistrate judge to which no objections are raised. *See Thomas v. Arn*, 474 U.S. 140, 149-50 (1985).

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objection, responses, and reply; and the materials submitted to Judge Payson. Based on that *de novo* review, the Court accepts and adopts Judge Payson's recommendation to grant Local 1095's motion and ECC's motion and to deny Moore's cross-motion.

## **DISCUSSION**

The Court assumes the reader's familiarity with the factual background and procedural history of this case and Judge Payson's analysis in the R&R. *See* Docket Item 82.

I.     TIMING OF LOCAL 1095'S MOTION

Moore objects to Judge Payson's conclusion that Local 1095's motion for summary judgment was not premature and that discovery in this case should not be reopened.  Docket Item 85 at 7-8.  Moreover, he asserts that after reading the R&R, "it would appear that [Moore] was not interested in conducting discovery" but that "[n]othing could be further from the truth."  *Id.* at 12.

The parties dispute the appropriate standard for reviewing Judge Payson's finding that Local 1095's motion was not premature and that additional discovery was not warranted.  Local 1095 argues that a request to reopen discovery is non-dispositive and that review should be limited to whether Judge Payson's decision was "clearly erroneous" or "contrary to law."  Docket Item 88 at 17 (citing Fed. R. Civ. P. 72(a)).  Moore contends that *de novo* review applies because the decision on whether to reopen discovery is inherently entangled with Local 1095's dispositive motion for summary judgment.  Docket Item 90 at 8.

Because Moore's objection fails under both standards, the Court assumes, without deciding, that Judge Payson's decision on Moore's Rule 56(d) request for additional discovery is subject to *de novo* review.[2]  But even under the less-deferential

---

[2] In making their arguments regarding the appropriate level of review, both sides cite Federal Rule of Civil Procedure 72, but neither side points the Court to case law on whether a Rule 56(d) motion for discovery is dispositive.  *See* Docket Item 88 at 17; Docket Item 90 at 8.  This Court also did not find any "case[ ]law within [the Second] Circuit addressing the issue, although the majority of district courts outside this Circuit treat Rule 56(d) motions as non-dispositive, subject to review under a 'clearly erroneous' or 'contrary to law' standard."  *Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 2021 WL 650612, at *1 n.1 (E.D.N.Y. Feb. 19, 2021) (collecting cases outside this Circuit).  Because Moore's objection fails even under the less-deferential *de novo* standard, however, this Court need not and does not reach the issue of what level of review applies to a magistrate judge's decision on a Rule 56(d) motion.

4

standard of *de novo* review, Judge Payson did not err in finding that Local 1095's motion was not premature and that discovery should not be reopened.

The original discovery deadline was in February 2020, before the COVID-19 pandemic might have been a problem. *See* Docket Item 12. The Court then extended that deadline until January 2021, *see* Docket Items 60-62, and the plaintiff never moved to further extend the deadline, nor did he even mention additional discovery until the deadline for dispositive motions had passed and Local 1095's motion for summary judgment was made. Indeed, this case now has been pending for almost five years, and it had been pending for almost four when Local 1095's motion was filed. And the plaintiff has offered no reason why that was not enough time to complete discovery—or why he did not ask for an extension before, or even shortly after, the discovery deadline expired.

Although the Court is sympathetic to the challenges of the pandemic and the personal circumstances of plaintiff's counsel, it agrees with Judge Payson that Moore "received a full opportunity to complete discovery."[3] Docket Item 82 at 12. For that reason, this Court will not revisit Judge Payson's conclusion that the motion for

---

[3] In the objection as well as before Judge Payson, Moore's counsel pointed to mediation as another reason for the limited discovery in this case. *See e.g.*, Docket Item 82 at 12 & n.7; Docket Item 85 at 3. And in early 2020, "[Moore's counsel] sent [opposing counsel] a letter notifying [opposing counsel] that [Moore's counsel] saw no point in extensive discovery if the case was to be resolved through mediation." Docket Item 85 at 3. These comments suggest that Moore's counsel believed that mediation should precede discovery. But in October 2020, Judge Scott warned the parties that "the Court treats mediation as a parallel process," that "[mediation] should not delay or defer other dates contained in the Scheduling Order," and that mediation "has no effect on the progress of the case toward trial." Docket Item 59. So it is not clear to this Court why, particularly after Judge Scott's explicit warning, Moore's counsel continued to hold on to that belief.

summary judgment was not premature and that discovery should not be reopened under Rule 56(d).

## II. LOCAL 1095'S SUMMARY JUDGMENT MOTION AND MOORE'S CROSS-MOTION

Moore raises two objections to Judge Payson's recommendation to grant Local 1095's motion for summary judgment and to deny Moore's cross-motion. First, he argues that Judge Payson erred in finding that Moore did not exhaust his claim that Local 1095 discriminated against him when it removed him as union president. Docket Item 85 at 5-7. Second, he argues that Judge Payson erred in finding that Moore did not raise a triable issue of fact on his claim that Local 1095 discriminated based on race when it declined to arbitrate his grievance. *Id.* at 8-12. But this Court agrees with Judge Payson's careful and thorough analysis in the R&R, *see* Docket Item 82 at 13-18, and finds that both of Moore's objections lack merit.

With respect to the first point, Moore's reply asserts that Judge Payson "clearly omit[ted] the most basic of allegations in [Moore's] [New York State Division of Human Rights ("DHR")] [c]omplaint" in finding that Moore did not exhaust his administrative remedies on his removal-as-president claim. Docket Item 90 at 10; *see generally* Docket Item 85 at 5-7. Specifically, he faults Judge Payson for overlooking the DHR complaint's allegation that Local 1095 "did not want a[n] African-American as vice president (or) president . . . and participated or coordinated an outright plan to have [him] removed." Docket Item 90 at 10. But that allegation, cited by Moore as coming from his "DHR [c]omplaint," actually comes from Moore's complaint filed *in this Court* and is absent from the DHR complaint. *Compare* Docket Item 90-1 at 1-6, *with* Docket Item 1 at 1-6. So Judge Payson most certainly did not "omit the most basic of

6

allegations" in Moore's DHR complaint, and this Court agrees with her conclusion that the DHR complaint, *see* Docket Item 63-20, "include[d] no mention of Moore's claim that he was removed from [the union's presidential] office for discriminatory reasons," Docket Item 82 at 13.

More troubling is the fact that counsel's argument on this score was clearly misleading. Because this Court has never witnessed any similar behavior by counsel (who often has appeared in this Court), it will assume that this was a mistake, plain and simple. Were such conduct to recur, however, the Court would not treat it so benignly.

With respect to his other objection, Moore argues that Judge Payson actually "identif[ied] several genuine issues of fact" but "brazenly . . . substitute[d] [her] own judgment for what should be the province of the trier-of-fact." Docket Item 85 at 8-9. He then suggests that the more favorable treatment given to two similarly situated Caucasian union members cited in Moore's opposition to summary judgment was enough to defeat summary judgment on his racial-discrimination claim. *Id.* at 9-12. But as Judge Payson correctly noted, one of those union members faced termination for a violation far more benign than Moore's and therefore was not a similarly situated comparator.[4] Docket Item 82 at 16-17. And Moore's allegations about the other

---

[4] The alleged comparator was terminated for not having a commercial driver's license even though one was a requirement for her position. *See* Docket Item 71-12 at 2-4, 14. In fact, however, her on-the-job duties did not include driving commercial vehicles, and she was not charged with driving a commercial vehicle without the appropriate license. *See id.* Moore, on the other hand, was terminated not simply for not having a commercial driver's license but for driving vehicles requiring such a license without one and thereby exposing his employer to liability. *See* Docket Items 63-3 at ¶¶ 13, 17; 63-11 at 2 (termination letter); 63-15 at 2-5 (receipts indicating that Moore drove vehicles requiring a commercial driver's license when he did not have one). So the union's decision to arbitrate the former and not the latter is not evidence of "pretext," and this Court agrees with Judge Payson that "no reasonable jury could infer race

member were made not upon personal knowledge but based on an "understanding" that he apparently learned from his attorney who learned that information secondhand from another attorney.  *See id.* at 17-18 & n.12; Docket Item 72 at ¶ 11 (Moore's affidavit noting that he was "informed through [his] attorney" about the other member); Docket Item 70 at ¶ 7 (affidavit of Moore's counsel noting that it was "represented to [him] by counsel for Erie County that another Caucasian worker" was represented by Local 1095).  Such at the very least *triple* hearsay is not sufficient to defeat a motion for summary judgment.  *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) ("[A]n affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial.").

   For all those reasons, after *de novo* review this Court accepts and adopts Judge Payson's recommendation to grant Local 1095's motion for summary judgment and deny Moore's cross-motion.

### III. ECC'S SUMMARY JUDGMENT MOTION

   In recommending that the Court grant ECC's motion for summary judgment, Judge Payson found that Moore's affidavit submitted in support of his opposition to ECC's motion should not be considered because it was not premised on his personal knowledge.  Docket Item 82 at 21-22.  She further found that "even if the Court were to assume that Moore's affidavit is premised on admissible personal knowledge, it would still be insufficient to defeat summary judgment."  *Id.* at 22.  Moore objected to the "technical" manner in which Judge Payson parsed his affidavit, *see* Docket Item 85 at

---

discrimination based upon a comparison of" the way the union handled the two cases.  *See* Docket Item 82 at 17.

10, but he did not object to Judge Payson's conclusion that even assuming the affidavit could be considered, it was insufficient to defeat summary judgment.[5]

Because Moore did not object to this second conclusion, this Court need not review the recommendation to grant summary judgment to ECC on that basis. *See Thomas*, 474 U.S. at 149-50. Moreover, because that recommendation does not turn on whether the affidavit could be considered, this Court need not reach Moore's objections about the "technical" way that Judge Payson parsed it. Nevertheless, this Court has reviewed Judge Payson's recommendation to grant ECC's motion for summary judgment *de novo*, accepts that recommendation, and adopts it in its entirety.

---

[5] In his reply to the responses to his objections, Moore says that "all [the] arguments made in the [o]bjections and . . . [r]eply as to the existence of a genuine dispute against [Local 1095] apply just as much to" ECC. Docket Item 90 at 14. But there are a few problems with that argument. First, Moore raised this argument for the first time in his reply, and ECC therefore had no opportunity to respond to it. *See Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002) ("[F]ailure timely to object [sic] to a magistrate's report and recommendation operates as a waiver of further judicial review of the magistrate's decision."); *see also United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003) ("We will not consider an argument raised for the first time in a reply brief."). Second, the assertion that all the arguments with respect to defendant Local 1095 "apply just as much to" defendant ECC stretches too far. The bulk of Moore's objections relating to his failure-to-arbitrate claim against Local 1095 focus on Local 1095's treatment of Constance Neubacker. *See* Docket Items 85 at 9-12; 90 at 11. But Moore did not argue that ECC's treatment of Neubacker gives rise to an inference of discrimination by ECC. Rather, his argument as to ECC focused on the treatment of three other employees: Jim Hartman, Ronnie Oak, and Carl Anderson. *See* Docket Item 76. So as a matter of substance, his arguments about Local 1095's treatment of Neubacker do not apply to ECC. Finally, to the extent that his claims do overlap, Moore's objection misses the point. Although Moore argues that Hartman's treatment gives rise to an inference of discrimination by both Local 1095 and ECC, *see id.*, he does not explain how Judge Payson erred in finding that Hartman was not similarly situated to Moore—a necessary step to proving his discrimination claims under a disparate treatment theory, *see* Docket Item 82 at 17-18, 23-24. And this Court can find no error in Judge Payson's analysis.

**CONCLUSION**

For the reasons stated above and in Judge Payson's R&R, Local 1095's and ECC's motions for summary judgment, Docket Items 63 and 71, are GRANTED; Moore's cross-motion, Docket Item 77, is DENIED; and the Clerk of the Court shall close this case.

SO ORDERED.

Dated:   May 12, 2022
         Buffalo, New York

                                    */s/ Lawrence J. Vilardo*
                                    LAWRENCE J. VILARDO
                                    UNITED STATES DISTRICT JUDGE